## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

LUIS FERNANDO LATORRE TAPIA,

      Plaintiff,

v.                             Case No: 8:23-cv-813-CEH-AAS

UR MENDOZA JADDOU, *in her*
*official capacity as Director of United States*
*Citizenship and Immigration Services*,

      Defendant.

_____

## **ORDER**

This action comes before the Court on Plaintiff Luis Fernando Latorre Tapia's Motion for Summary Judgment (Doc. 22), Defendant Ur Mendoza Jaddou's Cross-Motion for Summary Judgment (Doc. 24), and Plaintiff Luis Fernando Latorre Tapia's response (Doc. 26). After careful consideration, and being fully advised in the premises, Plaintiff's Motion will be denied and Defendant's Cross-Motion for Summary Judgment will be granted for the reasons that follow.

## I.      BACKGROUND

Plaintiff Dr. Luis Fernando Latorre Tapia is a native citizen of Ecuador. Doc. 17, Certified Administrative Record ("CAR"), at 284.[1] On June 1, 2022, Plaintiff Dr. Luis Fernando Latorre Tapia filed an I-140 immigrant visa petition with U.S. Citizenship & Immigration Services (USCIS). *Id.* at 283-92. Dr. Latorre's visa

_____

[1] Page citations refer to the page numbers assigned by the CM/ECF system.

petition requested classification as an "alien of extraordinary ability" under 8 C.F.R. § 204.5(h). *Id.* In his application, Dr. Latorre claimed he was an alien of extraordinary ability because of his expertise in the field of academics, pedagogical legal consulting, and higher education legislation. *Id.* at 293. Dr. Latorre's application included evidence documenting his membership in higher education associations, his role in those organizations, scholarly articles he had published, and his salary. *Id.* at 2-5; 304-06. On June 13, 2022, USCIS sent Dr. Latorre a request for evidence (RFE), seeking further information on multiple visa requirements. *Id.* at 9-14. On November 4, 2022, Dr. Latorre responded to USCIS's RFE with supporting documentation to supplement his initial filing. *Id.* at 17-25.

On November 21, 2022, USCIS sent Dr. Latorre notification that the agency had denied his application for an alien of extraordinary ability visa. *Id.* at 2-6. USCIS based their denial on Dr. Latorre's failure to demonstrate that he (1) had received an internationally recognized prize or award or (2) fulfilled three of the ten statutory requirements needed to demonstrate extraordinary ability. *Id.* at 6.

After the denial, Dr. Latorre sought judicial review of USCIS's decision by filing a complaint in the Middle District of Florida on April 13, 2023. Doc. 1. Dr. Latorre now moves for summary judgment and requests that the Court set aside the November 21, 2022, denial of his immigrant visa petition. Doc. 22. On January 28, 2025, USCIS filed a cross-motion for summary judgment and a response. Doc. 24.  Dr. Latorre filed a response to USCIS's cross motion on February 18, 2025. Doc. 26.

## II.    LEGAL STANDARD

### A. Administrative Procedures Act ("APA")

A court can set aside the ruling of an agency if the decision is found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C.A. § 706 (2)(A). The APA's arbitrary-and-capricious standard requires courts to approach decisions from administrative agencies with considerable discretion, limiting their consideration to whether an agency considered the "relevant data and articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (citation modified). "The APA's arbitrary-and-capricious standard requires that agency action be reasonable and reasonably explained*.*" *Fed. Commc'ns Comm'n v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). "Under this narrow form of review, [courts] may find a rule arbitrary and capricious where the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Alabama-Tombigbee Rivers Coalition v. Kempthorne*, 477 F.3d 1250, 1254 (11th Cir. 2007) (citation modified). The court "may not supply a reasoned basis for the agency's action that the agency itself has not given[.]" *Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 285-

86 (1974). However, "[e]ven when an agency explains its decision with less than ideal clarity, a reviewing court will not upset the decision on that account if the agency's path may reasonably be discerned." *Alaska Dep't of Env't Conservation v. E.P.A.*, 540 U.S. 461, 497 (2004) (citation modified). A court's role is "not to conduct its own investigation and substitute its own judgment for the administrative agency's decision." *P.E.A.C.H. v. U.S. Army*, 87 F.3d 1242, 1246 (11th Cir. 1996).

### B. Extraordinary Ability

The Immigration and Nationality Act provides certain "preference" categories for employment-based visas. 8 U.S.C. § 1153(b). One of these categories is the First Preference EB-1 visa, which applies to certain "[a]liens with extraordinary ability" and is colloquially dubbed the "Einstein" or "genius" visa. *See id.*; *Amin v. Mayorkas*, 24 F.4th 383, 386-87 (5th Cir. 2022). USCIS evaluates EB-1 visa applicants using a two-step analysis. USCIS Policy Manual, Vol. 6, Pt. F, Ch. 2(B) (2025). To pass the first step of the extraordinary ability visa determination, a petitioner must either demonstrate achievement of a "major, internationally recognized award" or provide evidence that the petitioner meets three of the following criteria:

(i)     Documentation of the alien's receipt of lesser nationally or internationally recognized prizes or awards for excellence in the field of endeavor;

(ii)    Documentation of the alien's membership in associations in the field for which classification is sought, which require outstanding achievements of their members, as judged by recognized national or international experts in their disciplines or fields;

(iii)   Published material about the alien in professional or major trade publications or other major media, relating to the alien's work in the field for which classification is sought. Such evidence shall include the title, date, and author of the material, and any necessary translation;

(iv)   Evidence of the alien's participation, either individually or on a panel, as a judge of the work of others in the same or an allied field of specification for which classification is sought;

(v)   Evidence of the alien's original scientific, scholarly, artistic, athletic, or business-related contributions of major significance in the field;

(vi)   Evidence of the alien's authorship of scholarly articles in the field, in professional or major trade publications or other major media;

(vii)   Evidence of the display of the alien's work in the field at artistic exhibitions or showcases;

(viii)  Evidence that the alien has performed in a leading or critical role for organizations or establishments that have a distinguished reputation;

(ix)   Evidence that the alien has commanded a high salary or other significantly high remuneration for services, in relation to others in the field; or

(x)   Evidence of commercial successes in the performing arts, as shown by box office receipts or record, cassette, compact disk, or video sales.

8 C.F.R. § 204.5(h)(3). The proper standard of review for determining whether an applicant has met the criteria is a preponderance of the evidence. *Brinklys v. Johnson*, 175 F. Supp. 3d 1338, 1350 (M.D. Fla. 2016). The second step is a "final merits determination" to determine whether the evidence is sufficient to demonstrate that

the applicant meets the "high level of expertise required for this immigrant classification." USCIS Policy Manual, Vol. 6, Pt. F, Ch. 2(B) (2025).

## III.    DISCUSSION

In his motion for summary judgment, Dr. Latorre argues that his application denial is arbitrary and capricious, an abuse of discretion, and contrary to law in violation of 5 U.S.C. § 706(2)(A). Doc. 22 at 1. In its cross-motion for summary judgment, USCIS argues that its decision must be upheld under the highly deferential APA standard because it articulated a satisfactory explanation for denying Dr. Latorre's application. Doc. 24 at 2-3.

In his application, Dr. Latorre submitted evidence to show that he is a member of an association in his field that requires outstanding achievements of their members as judged by recognized experts in that field (8 C.F.R. § 204.5(h)(3)(ii) or "Membership Criterion"), has authored scholarly articles in his field (8 C.F.R. § 204.5(h)(3)(vi) or "Authorship Criterion"), has performed in a leading or critical role in an organization with a distinguished reputation (8 C.F.R. § 204.5(h)(3)(viii) or "Leading or Critical Role Criterion"), and has received a high salary compared to others in his field (8 C.F.R. § 204.5(h)(3)(ix) or "High Salary Criterion"). CAR at 4-6. Out of these four categories, USCIS determined that Dr. Latorre only met the Authorship Criterion. *Id.* at 5. USCIS did not reach the final merits determination. *Id.* at 6.

### A. Membership Criterion

Under 8 C.F.R. § 204.5(h)(3)(ii), an applicant must show evidence of membership in associations in his field, that require outstanding achievements of their

6

members, and whose membership eligibility is judged by recognized national or international experts in his field. Pursuant to this criterion, Dr. Latorre submitted evidence of membership in various higher education institutions, such as membership on the board of directors and as a founding legal advisor of Centro de Transferencia y Desarollo de Tecnologia ("CTT") de los Andes, on the council of regents of Instituto Superior Tecnologico Cordillera ("ISTC"), and on the board of directors and council of regents of Catholic University of New Spain. CAR at 4. USCIS found that he did not satisfy this criterion because he did not submit "objective, documentary evidence" that these organizations require outstanding achievements of their members as judged by recognized experts in that field. *Id.* at 3. In his motion for summary judgment, Dr. Latorre contends that USCIS erroneously found that he did not satisfy this criterion because it required objective evidence, misstated the contents of the record, and did not address Plaintiff's role with Catholic University. Doc. 22 at 10-14.

First, Dr. Latorre argues that USCIS imposed a novel evidentiary standard by requiring evidence of membership criteria that does not come from the organization itself. *Id.* at 12-13. Dr. Latorre alleges that this requirement is not in the language of 8 C.F.R. § 204.5(h)(3)(ii), thus USCIS relied on factors Congress did not intend it to consider. *Id.* USCIS responds that not imposing this requirement would allow for the absurd result of Plaintiff being able to write a subjective declaration about his own outstanding achievements. Doc. 24 at 15-16.

In its decision, USCIS relied on the plain language of the criterion, which requires evidence of "(1) of membership in associations, (2) that the associations are

in the beneficiary's field, (3) that the associations require outstanding achievements of their members, and (4) that membership eligibility is judged by recognized national or international experts in their field." CAR at 4. USCIS does not dispute that Dr. Latorre is a member of higher education institutions such as ISTC and CTT. However, USCIS found that Dr. Latorre did not submit sufficient evidence that these organizations require outstanding achievement of their members and that membership eligibility is judged by experts in the field. *Id.* USCIS's explanation was reasonable. The language of 8 C.F.R. § 204.5(h)(3)(ii) explicitly requires documentation of membership in organizations that require "outstanding achievements of their members, as judged by recognized national or international experts in their disciplines or fields." Thus, it is within the plain language of the criterion for USCIS to require the objective evidence to which Dr. Latorre objects. Therefore, USCIS did not rely on factors Congress did not intend it to consider.

Next, Dr. Latorre argues that USCIS offered an explanation for its decision that runs counter to the evidence before it. *Id.* at 12. Specifically, Dr. Latorre argues that USCIS incorrectly believed documents related to his membership in CTT were in Spanish and were not accompanied by English translations. *Id.* at 11. As a result, he contends that USCIS did not review those documents. USCIS responds that the presence of certified translations was not a factor in its decision. Doc. 24 at 15.

In its decision, USCIS stated that Dr. Latorre "submitted information about [CTT] which discusses membership criteria and documents which appear to relate to the beneficiary's membership, but they are in Spanish" and "not accompanied by

translations." CAR at 4. Dr. Latorre concedes that he submitted three exhibits in Spanish that were not accompanied by English translations. *See* Doc. 22 at 10 ("It is true that Plaintiff's immigration counsel did not submit translations for Exhibits 2-4); *see also* CAR at 341-43 (Exhibits 2-4). However, Dr. Latorre also submitted certified translations for other documents that concerned his membership in CTT. CAR at 340-41, 347-48, 362-89, 390-404 (Exhibits 1, 6, 9, and 10). Regardless, whether Dr. Latorre provided certified translations was not a factor in USCIS's decision or a part of its explanation. *See* CAR at 4. Dr. Latorre's certified translations include a letter from the CTT de Los Andes, stating that Dr. Latorre Tapia has been a board member and founding legal advisor of CTT, and a letter from the Financial Director of Cordillera University Technological Institute, stating that he has been a member of ISTC for more than three years. CAR at 340-41, 347-48. These documents show that Dr. Latorre was a member of these organizations, but they do not address whether these organizations require outstanding achievement of their members and that membership eligibility is judged by experts in the field. Therefore, they do not constitute the evidence that the USCIS found was lacking to fulfill this criterion.

Dr. Latorre did submit one certified translation that conceivably shows outstanding achievements of its members. Dr. Latorre submitted a certified translation of the Ecuadorian Organic Law of Higher Education. CAR at 369. The document states that "the members of the Board of Regents must accredit to the highest Higher Collegiate Body extensive academic or professional career, experience in management or performance in functions of great relevance in the public, private or community

sector, and probity, and will be legally responsible for the decisions and acts they carry out in the exercise of their functions." CAR at 370. USCIS argues that the problem with this document is that it applies membership in the Board of Regents broadly to all universities in Ecuador and does not show that CTT specifically requires outstanding achievements of its board. This Court cannot "substitute its own judgement for the administrative agency's decision[,]" and USCIS's explanation is not unreasonable. *See Sierra Club v. Van Antwerp*, 526 F.3d 1353, 1360 (11th Cir. 2008). Therefore, USCIS did not offer an explanation for its decision that ran counter to the evidence before it.

Last, Dr. Latorre argues that USCIS failed to consider evidence of his role with Catholic University. Doc. 22 at 13-14. USCIS responds that it was not required to discuss every piece of evidence and that this evidence suffers from the same issues addressed in its decision. Doc. 24 at 16-17. USCIS "must consider all evidence that an applicant has submitted but is not required to address specifically each claim made by the petitioner or each piece of evidence presented." *Gomez v. U.S. Atty. Gen.*, 556 F. App'x 832, 834 (11th Cir. 2014). Rather, USCIS must "consider the issues raised and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." *Id.* USCIS is correct that it does not need to address every piece of evidence as long as it is clear that it considered all the evidence. Here, it is clear USCIS considered Dr. Latorre's role with Catholic University, because it suffers from the same issues addressed in its rationale for finding that he did not satisfy this criterion. The evidence on which Dr. Latorre relies is the

description of the university issued by the university itself. CAR at 405-11. USCIS
stated in its decision that Dr. Latorre was missing objective, external evidence.
Therefore, USCIS did not act unreasonably in failing to explicitly address this
evidence. USCIS reasonably concluded that Dr. Latorre did not satisfy 8 C.F.R. §
204.5(h)(3)(ii).

### B. Leading or Critical Role Criterion

To satisfy the criterion under 8 C.F.R. §204.5(h)(3)(viii), the petitioner must
show that (1) he performed a "leading or critical role" and (2) performed that role for
an organization or establishment that has a "distinguished reputation." USCIS Policy
Manual, at Vol. 6, Pt. F, Ch. 2(B)(1) (2025). In support of this criterion, Dr. Latorre
submitted evidence of his roles in nine separate organizations. CAR at 5. He submitted
letters of recommendation that discussed his roles on committees as an advisor, a
visiting professor, and a consultant, and evidence about his role in various higher
education organizations written by the organizations themselves. *Id.* He argues that
USCIS erroneously denied this criterion by requiring external evidence, not
considering late-filed evidence, and not adequately considering his role in National
Council of Universities and Polytechnic Schools (CONUEP) or Escuela Superior
Politécnica del Literal (ESPOL). Doc. 22 at 16-21.

First, Dr. Latorre argues that USCIS again imposed evidentiary requirements
that Congress did not intend. *Id.* at 18-20. He argues that it was improper for USCIS
to not give subjective evidence, meaning evidence from individuals within the
organization, more weight. *Id.* at 19. He argues that an individual's contributions to

11

an organization would be proven best by statements from the organization itself. *Id.* at 19. He cites the USCIS Policy Manual in support: "officers look at whether the evidence establishes that the person has contributed in a way that is of significant importance to the outcome of the organization or establishment's activities or those of a division or department of the organization." USCIS Policy Manual, at Vol. 6, Pt. F, Ch. 2(B)(1) (2025).

In its denial, USCIS determined that Dr. Latorre did not submit objective, documentary evidence of "specific examples of how the beneficiary's performance in his roles compared with others in related positions." CAR at 5. A comparison of the petitioner's role to others in the organization to determine whether the role is leading or critical falls within the plain language of this criterion. *See* 8 C.F.R. §204.5(h)(3)(viii). Thus, USCIS relied on factors Congress intended it to consider. Additionally, USCIS's decision to give little weight to evidence of an organization written by the organization itself was within its sound discretion, which is entitled to great deference. *See Sierra Club*, 526 F.3d at 1360. Thus, USCIS reasonably concluded that an organization's description of itself is not credible alone.

Next, Dr. Latorre argues that USCIS erroneously denied this criterion by not considering late-filed evidence. Doc. 22 at 20-21. Plaintiff alleges that USCIS prompted the late-filed documents because its Request for Evidence (RFE) asked for letters from organizations that "specifically address how the beneficiary's role for the organization or establishment is or was leading or critical." *See* CAR at 11-12. In response to the RFE, Dr. Latorre provided letters describing his roles with

Iberoamerican University of Ecuador and Regional Autonomous University of the Andes. *Id.* at 6. Dr. Latorre argues that although these letters were dated after the petition, they described Plaintiff's work prior to the time of filing. Doc. 22 at 20.

USCIS responds that although the RFE prompted the late-filed documents, Plaintiff should have submitted evidence that pre-dated the petition. Doc. 24 at 18-19. USCIS also argues that the evidence showed that these universities were accredited, but did not show that these universities had a distinguished reputation. *Id.* at 17-18.

"An application or petition shall be denied where evidence submitted in response to a request for initial evidence does not establish eligibility at the time the application or petition was filed." 8 C.F.R. § 103.2(b)(12); *see Braga v. Poulos*, No. CV 06-5105, 2007 WL 9229758, at *7 (C.D. Cal. July 6, 2007) ("The evidence to meet a visa application must establish eligibility at the time the visa application was filed."), *aff'd*, 317 F. App'x 680 (9th Cir. 2009). It is within USCIS's discretion whether to consider evidence dated after the petition. Thus, USCIS was not required to consider the late-filed evidence, even though it described Dr. Latorre's role prior to his petition. Additionally, USCIS identified a second rationale for not giving this evidence weight: "the petitioner did not explain how simply being an accredited university demonstrates a distinguished reputation." *See* CAR at 6. USCIS reasonably concluded that being an accredited university is not enough to fulfill the requirement of a distinguished reputation.

Last, Dr. Latorre argues that USCIS failed to consider evidence of his most compelling roles with National Council of Universities and Polytechnic Schools

(CONUEP) and Escuela Superior Politécnica del Literal (ESPOL). Doc. 22 at 17-18. Dr. Latorre argues that these positions fulfill the requirements of 8 C.F.R. §204.5(h)(3)(viii), and USCIS's decision fails to mention them. *Id.*

USCIS responds that it was not required to address every claim, and regardless, this evidence lacks an objective measure of comparison. Doc. 24 at 18. As an example, USCIS states that Dr. Latorre provided "an internal article that ESPOL was recognized as the number one public university in Ecuador by a certain entity, [but] there is no evidence concerning what that entity is, or any evidence of its objectivity." *Id.*

As noted *supra*, USCIS must consider all evidence but does not need to explicitly address each piece of evidence. *See Gomez*, 556 F. App'x at 834. USCIS must provide a decision that shows it reviewed the evidence presented and thought about the relevant factors. *Id.* USCIS was not required to explicitly address Dr. Latorre's specific roles with CONUEP and ESPOL in its decision. USCIS had already generally explained in its decision that Dr. Latorre failed to provide any objective evidence comparing his roles with others and that any of his higher education organizations had a distinguished reputation. Its decision provided a reasonable rationale for determining that his roles with CONUEP and ESPOL did not satisfy the criterion. USCIS reasonably concluded that Dr. Latorre did not satisfy 8 C.F.R. § 204.5(h)(3)(viii).

### C. High Salary Criterion

Under 8 C.F.R. § 204.5(h)(3)(ix), an applicant must show that his salary or remuneration is high relative to the compensation of others working in the field. In

support of this criterion, Dr. Latorre submitted a copy of his 2021 income tax return, a letter from Regional Autonomous University of the Andes ("UNIANDES") attesting to how much he earns, information about the average salary of university professors, presidents, deans, and attorneys general in Ecuador, and tables from different educational institutions listing the salaries of their general secretaries. CAR at 6.

Dr. Latorre argues that USCIS failed to acknowledge the documentary evidence he submitted. Doc. 22 at 22. He contends that he provided sufficient corroboration by submitting his 2021 income tax return and six paystubs from UNIANDES, which were not acknowledged by Defendant in its decision. *Id.* at 22.

In its decision, USCIS stated that Dr. Latorre "submitted a letter from UNIANDES attesting to how much the [Plaintiff] earns, but it is not supported with actual documentation." CAR at 6. This statement is not supported by the record. Dr. Latorre provided actual documentation of his salary in the form of his 2021 income tax return and six paystubs from UNIANDES. *Id.* at 190-201, 767-84. Regardless, USCIS provided an explanation for denying the fulfillment of this criteria unrelated to Dr. Latorre's UNIANDES salary. USCIS found that he failed to provide sufficient evidence comparing his salary to other salaries in his field. *Id.* at 6. Therefore, even if USCIS acknowledged that Dr. Latorre provided sufficient documentation of his UNIANDES salary, he would still fail to meet this criterion.

Dr. Latorre also disputes the finding that he did not provide sufficient evidence comparing his salary to others in his field. Doc. 22 at 22-26. He points to the

information he submitted about the average salary of university professors, presidents, deans, and attorneys general in Ecuador, and tables from different educational institutions listing the salaries of their general secretaries. *Id.* at 24-25. Dr. Latorre argues that this evidence is sufficient to show his compensation is high compared to others in his field. *Id.* at 25.

USCIS responds that the evidence provided does not relate to Dr. Latorre's specific field as an academic pedagogical legal consultant. Doc. 24 at 19. USCIS also argues that this evidence lacks sufficient indicia of reliability. *Id.* at 20.

Here, too, Dr. Latorre essentially asks the Court to reweigh the evidence and reach a different conclusion from USCIS. This Court cannot "reweigh the evidence" or "substitute our judgment for that of the agency." *See Meisel v. Sec. & Exch. Comm'n*, 97 F.4th 755, 761 (11th Cir. 2024). USCIS's conclusion that Dr. Latorre did not satisfy 8 C.F.R. § 204.5(h)(3)(ix) was not unreasonable.

USCIS did not act arbitrarily and capriciously in concluding that Dr. Latorre failed to fulfill the requirements of 8 C.F.R. § 204.5. Therefore, the Court will grant Defendant Ur Mendoza Jaddou's Cross-Motion for Summary Judgment (Doc. 24) and deny Plaintiff Luis Fernando Latorre Tapia's Motion for Summary Judgment.

Accordingly, it is hereby **ORDERED:**

1. Plaintiff's Motion for Summary Judgment (Doc. 22) is **DENIED**.

2. Defendant's Cross-Motion for Summary Judgment (Doc. 24) is **GRANTED**.

3. The Clerk is directed to enter judgment in favor of Defendant Ur Mendoza Jaddou, Director, United States Citizenship and Immigration Services and against Plaintiff Luis Fernando Latorre Tapia.

4. The Clerk is further directed to close this case.

**DONE** and **ORDERED** in Tampa, Florida on September 30, 2025.

Charlene Edwards Honeywell
United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Parties